NO. 07-02-0476-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 9, 2004
_____

IN THE MATTER OF THE MARRIAGE OF MICHELLE LEANN
JAMESON AND MICHAEL SCOTT ANDERSON AND IN THE
INTEREST OF C.M.A., A CHILD
_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A32076-0203; HON. JACK R. MILLER, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Michelle Leann Jameson appeals from a final divorce decree terminating her marriage to Michael Scott Anderson. The two had a child, C.M.A. This appeal involves the decision of the trial court to grant Michael the exclusive right to establish the primary residence of the child. Through three issues, Michelle contends that 1) the trial court erred in failing to enter various findings of fact and conclusions of law she requested, 2) the trial court's judgment lacks factually sufficient evidentiary support, and 3) the trial court abused its discretion in denying her motion for new trial. We affirm the judgment.

### Issue 1 - Failure to File Additional Findings and Conclusions

In her first issue, Michelle argues that, although it entered findings of fact and conclusions of law, the trial court should have made additional findings which pertained "to

its two conclusions of law 6 and 7 that it was in the best interests of the child to appoint the parties joint managing conservators and to appoint Appellee as the custodial joint managing conservator." Because those additional findings were not made, she allegedly suffered harm. We overrule the issue.

A trial court's duty to enter additional findings of fact and conclusions of law is finite; that is, it need only enter additional findings and conclusions on ultimate or controlling issues. *Hill v. Hill,* 971 S.W.2d 153, 155 (Tex. App.–Amarillo 1998, no pet.); *Asai v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 122 (Tex. App.–El Paso 1996, no writ); *Kirby v. Chapman,* 917 S.W.2d 902, 909 (Tex. App.–Fort Worth 1996, no writ); *Rafferty v. Finstad,* 903 S.W.2d 374, 376 (Tex. App.–Houston [1ˢᵗ Dist.] 1995, writ denied). Findings that are evidentiary in nature do not fall within that scope. *See In re Edwards*, 79 S.W.3d 88, 94-95 (Tex. App.–Texarkana 2002, no pet.) (stating that the trial court need only enter findings or additional findings on ultimate or controlling issues rather than on mere evidentiary issues); *Kirby v. Chapman*, 917 S.W.2d at 909 (stating that findings are not required if they are only evidentiary). Moreover, if the requested findings are either already covered by those actually issued or are immaterial and unnecessary, the trial court may refuse to make them. *Kirby v. Chapman,* 917 S.W.2d at 909. So too may the trial court refuse to act when the additional findings sought are unsupported in the record or contrary to other previous findings. *In re Edwards*, 79 S.W.3d at 94-95.

Next, authority defines ultimate or controlling issues or facts as those that are essential to the cause of action or defense. *Wichita Falls & Ok Ry. Co. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79, 84 (1940), *overruled on other grounds by Burk Royalty Co. v.*

*Walls,* 616 S.W.2d 911 (Tex. 1981); *In re Edwards*, 79 S.W.3d at 95. If the fact is necessary to form the basis of the judgment, then it is an ultimate or controlling one. *Wichita Falls & Ok Ry. Co. v. Pepper*, 135 S.W.2d at 84. In contrast, an evidentiary fact is one that may be considered by the factfinder in deciding the controlling issue, *In re Edwards*, 79 S.W.3d at 95; *accord, Wichita Falls & Ok Ry. Co. v. Pepper*, 135 S.W.2d at 84 (stating that the jury need not be asked to resolve disputes relating to subordinate facts considered in determining ultimate facts), and is necessarily embraced in the determination of the ultimate issue. *Wichita Falls & Ok Ry. Co. v. Pepper*, 135 S.W.2d at 84. For instance, requests which, in essence, ask the court to explain what it relied on or how it arrived at a particular finding are evidentiary. *Dura-Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex. App.–Houston [1st Dist.] 1985, writ ref'd n.r.e.). And, being evidentiary, the trial court need not address them. *Id.*

Applying the aforementioned principles to the dispute before us, we find several problems with Michelle's contention. First, of the 40 additional findings she tendered to the trial court, none are specifically mentioned in her appellate brief. In other words, no attempt was made to explain why or how any of them constituted ultimate issues. Instead, she merely posits that "[h]er requests included findings that would support the trial court's judgment and that could have clarified the basis of the trial court's decision." Again, that is not the test used in determining whether a fact is ultimate or controlling and, therefore, one which the trial court must make. Her burden was to illustrate for us that each finding to which she believed herself entitled was necessary to the formation of the judgment actually entered or essential to her claim. So, we have a briefing deficiency before us.

3

*See* TEX. R. APP. P. 38.1(h) (requiring the brief to have clear and concise argument for the contention made, with appropriate citation to authority and to the record); *In re K.S.,* 76 S.W.3d 36, 45 (Tex. App.–Amarillo 2002, no pet.) (holding that the issue is waived when accompanied by inadequate briefing).

Second, and more importantly, the ultimate or controlling issue when addressing questions of conservatorship and possession is the best interests of the child. TEX. FAM. CODE ANN. §153.002 (Vernon 2002). Here, the trial court entered findings of fact and conclusions of law. Therein, it stated that it was "in *the best interest of the child* to name the parties Joint Managing Conservators," and it was "*in the best interests of the child* that Michael . . . be named as Joint Managing Conservator who should have the following exclusive rights: (a) [t]o determine the primary residence of the child . . . ." (Emphasis added). Thus, the findings of fact and conclusions of law at bar did expressly address the ultimate or controlling fact essential to the claim and necessary to the judgment executed below.[1] No additional findings were needed. *See McClain v. Moore*, 701 S.W.2d 62, 64-65 (Tex. App.–Tyler 1985, no writ) (holding that it was enough to prove that the best interests of the child warranted the change in custody and that the petitioner "was not required to prove and secure a finding that [the mother] was an unfit parent"); *Bennett v. Northcutt*, 544 S.W.2d 703, 709 (Tex. Civ. App.–Dallas 1976, no writ) (stating that since the only issue involved in the name change of the child was "the best interest of the child" any finding other than what was in the best interests of the child was merely evidentiary).

---

[1] That it may appear under the heading "Conclusions of Law" is of no consequence since conclusions which are actually findings will be treated as findings. *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex. App.–Corpus Christi 2003, pet. denied).

4

This is especially so when Michelle described the absent findings as those depicting "the basis for giving principal custody of [C.M.A.] to the Appellee" and illustrating "[h]ow or why the trial court decided to name the Appellee as custodial joint managing conservator . . . ." Again, *Dura-Stilts* tells us that proposed findings which simply address how or why the trial court resolved the ultimate fact in a particular way are merely evidentiary and need not be entered. So, we find no error in the trial court's failure to enter the additional findings sought by Michelle.

### *Issue 2 - Factual Sufficiency of the Evidence*

Via her second issue, Michelle questions whether the trial court's judgment enjoys the support of factually sufficient evidence. We overrule the issue.

If trial is to a jury, one must first allege in a motion for new trial that the evidence is factually insufficient to preserve the complaint for appeal. TEX. R. CIV. P. 324(b)(2). Here, trial was to a jury, and though Michelle filed a motion for new trial, she did not contend therein that the evidence was factually insufficient to support the verdict. New trial was sought on other unrelated grounds. Accordingly, the complaint was not preserved for review. *In re Robinson,* 16 S.W.3d 451, 453 (Tex. App.–Waco 2000, no pet.) (holding that because the appellant did not allege, in the motion for new trial, that the evidence was factually insufficient, the complaint was not preserved for appeal).

Nevertheless, even if the complaint was preserved we would have to overrule it given our review of the entire record. Some evidence supports the verdict. More importantly, that evidence is not so against the great weight and preponderance of the other evidence appearing in the entire record as to render the judgment manifestly unjust.

5

*See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003) (stating that the evidence is factually insufficient when the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some "evidence of probative force" in support of the verdict). Indeed, evidence indicates that either parent could effectively act as the primary conservator. And, in such situations, the appointment of the father is not improper. *Fergus v. Fergus,* 547 S.W.2d 51, 53 (Tex. Civ. App.–Eastland 1977, no writ)*.*

### I*ssue 3 - Motion for New Trial*

In her last issue, Michelle asserts that the trial court should have granted her motion for new trial. Three grounds were mentioned in the motion below and form the basis of her complaint here. The first involved Michael's purported fraud committed upon the court. The second concerned an alleged conflict of interest, while the third pertained to the trial court's supposed consideration of gender in making its determination. We overrule the issue.

We review the trial court's decision through the perspective of abused discretion. *Wyatt v. Wyatt,* 104 S.W.3d 337, 339 (Tex. App.–Dallas 2003, no pet.). That is, we must let it stand unless we determine that the trial court abused its discretion in making it. Furthermore, a court abuses its discretion when its decision fails to comport with guiding rules and principles or otherwise lacks evidentiary support. *In re P.E.W.,* 105 S.W.3d 771, 774 (Tex. App.–Amarillo 2003, no pet.).

*Fraud Upon the Court*

Though cast in the framework of "fraud" committed upon the court, Michelle initially claims that she discovered new evidence that places the credibility of Michael's prior

6

testimony into question or that evinces a violent nature. Thus, it entitled her to a new trial. We disagree.

Whether one is entitled to a new trial due to the discovery of new evidence depends upon the satisfaction of several criteria. The movant must illustrate 1) that the evidence was indeed new, 2) that the movant lacked notice of it prior to trial, 3) that due diligence was used to obtain the evidence prior to trial, 4) that the evidence is not cumulative of other evidence already admitted, and 5) that the evidence does not tend only to impeach the testimony of an adversary. *In re Yarbrough*, 719 S.W.2d 412, 415 (Tex. App.–Amarillo 1986, no writ). Additionally, motions for new trial based upon newly discovered evidence are not looked upon with favor "unless it appears the evidence would probably cause a different result." *Id.* Indeed, the "new evidence should bring to light a new and independent truth which is so decisive as to show that justice has not been obtained." *Id.*

In applying the aforementioned standard to the alleged evidence of fraud at bar, we must reject the contention for several reasons. First, Michelle says nothing about the diligence, if any, she used to discover any of the supposedly unknown information. Second, the evidence regarding Michael's physical altercation with another individual while in the military was known to Michelle long before trial; so, it could not be deemed newly discovered. Third, the evidence about his previous arrests for theft was sought as a means of questioning Michael's credibility and the veracity of his prior testimony. That this is so is depicted by an excerpt from Michelle's appellate brief. In describing why his purported arrests were relevant, she argued that they involved "a crime of moral turpitude" and "color[ed] his ability to tell the truth, and therefore, the believability of his trial testimony." So, it appears that Michelle wanted the testimony simply to impeach her adversary. Nor

7

did Michelle attempt to explain or illustrate why presentation of any of this supposedly new evidence to the factfinder would probably result in a different outcome. So too did she fail to explain why the evidence was so decisive as to show that justice had not previously been achieved. Given these circumstances, we cannot say that she carried her burden to prove that the trial court abused its discretion when it refused to grant a new trial on her claims of purported fraud. *See Davis Bumper to Bumper v. Roberts*, 331 S.W.2d 762, 767 (Tex. Civ. App.–Amarillo 1959, writ ref'd n.r.e.) (stating that the burden lies with the movant to satisfy the criteria for obtaining a new trial on the basis of newly discovered evidence).

*Evidence Related to Custody of an Older Child*

Next, Michelle contends that new evidence pertaining to the reasons why she relinquished custody of her older child to her parents warranted a new trial. This testimony purportedly involved threats directed at her by her parents. That these threats allegedly induced her to relinquish custody of her prior child to her parents indisputably establishes that she knew of them long before a trial was had in this cause. Given this, the evidence can hardly be deemed newly discovered.

*Conflict of Interest*

Next, Michelle contends that she revealed confidences to the attorney that represented her in a prior divorce and child custody matter. These confidences were then disclosed to the attorney of Michael and used against her, so the argument goes. And, because she did not authorize their disclosure, she was purportedly entitled to a new trial. We again disagree for several reasons.

First, Michelle refers us to no specific confidence that was supposedly disclosed to anyone. Second, to the extent that the confidence consisted of her parents obtaining

8

custody of her older child, that was a matter of public record, *e.g.* a court order granting custody of the child to Michelle's parents. Matters contained in a public record are hardly confidential. Third, and to the extent she posits that there arose some conflict of interest, Michelle did not move to disqualify anyone prior to or at trial. Nor did she establish that both she and her counsel were unaware of the relationship which purportedly gave rise to the conflict. This is fatal to her claim on appeal. *See Vaughn v. Walther,* 875 S.W.2d 690, 690-91 (Tex. 1994) (holding that a daughter's failure to timely file a motion to disqualify her mother's attorney in an action seeking custody of the daughter's child on the basis that the attorney had previously represented the daughter in a custody action waived the complaint).

*Gender and Association Based Discrimination*

Lastly, Michelle suggests that a new trial was warranted because the trial court supposedly considered her gender and Michael's stint in the military in granting Michael primary custody of C.M.A. We disagree.

While both the Texas Constitution, TEX. CONST. art. I, §3a, and state statute, TEX. FAM. CODE ANN. §153.003 (Vernon 2002), bar discrimination based on gender, Michelle cites us to no authority holding that a parent's military experience cannot be considered in determining matters of custody. Instead, she simply posits that her ex-husband's "military service cannot be compared to [her] lack thereof because [she] did not have the same encouragement to join the service as [Michael] did." What this has to do with gender or associational discrimination goes unexplained. Moreover, we take judicial notice that women can and do certainly join the military service, and we are directed to nothing of

9

record even suggesting that Michelle was somehow barred from doing so (assuming *arguendo* that military service even factored into the trial court's decision).

Michelle also suggests that the trial court improperly considered that she was "living with members of the opposite sex out of wedlock" as basis for its decision. Yet, other than stating that "such evidence cannot be considered her [sic]," she supplies us with no explanation or argument on the matter. Nor are we cited to legal authority on point. Indeed, that to which she alludes, TEX. FAM. CODE ANN. §153.003, merely states that the marital status or gender of the parents and child cannot be considered in determining matters of custody. It says nothing about prohibiting a trial court from assessing the affect of a parent's lifestyle and lifestyle choices upon the child in deciding matters of custody, assuming *arguendo* that such were even factored into the equation at bar. *See In re C.E.B.,* 604 S.W.2d 436, 442 (Tex. Civ. App.–Amarillo 1990, no writ) (noting that a parent's lifestyle is one of many factors the trial court can assess).

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Justice

10